Estate of Barneth Satuloff, Thelma Satuloff, Bernard Satuloff, and Stanley G. Falk, Executors v. Commissioner.
Estate of Satuloff v. Commissioner
Docket No. 11536.
United States Tax Court
1947 Tax Ct. Memo LEXIS 30; 6 T.C.M. (CCH) 1246; T.C.M. (RIA) 47312; November 24, 1947
Stanley G. Falk, Esq., 1918 Liberty Bank Bldg., Buffalo, N. Y., for the petitioners. J. Frost Walker, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $18,988.43 by including the entire proceeds of nine policies of insurance in the gross estate under section 811 of the Internal Revenue Code. The petitioners allege that it was error to include any more than the proportionate amount which they returned on the basis of premiums paid by the decedent after January 10, 1941. The *31 only other adjustment made by the Commissioner resulted in a reduction of the net estate. Findings of Fact The petitioners are the executors under the will of the decedent, who died a resident of Buffalo, New York, on April 15, 1944. The decedent was then fifty-nine or sixty years of age. The estate tax return was filed with the collector of internal revenue for the 28th district of New York. The petitioners are the decedent's wife, his son, and his attorney. They were named as co-trustees in each of the trusts and as coexecutors in each of the wills hereinafter described. A stipulation of facts has been filed which includes copies of those instruments. The stipulation is incorporated herein by reference. On July 23, 1937, the decedent executed a trust in which he expressed an intention of making policies of insurance on his life payable to the trustees. Upon his death the trustees were to collect and hold the proceeds thereof in separate trusts of stated amounts for the benefit of his two daughters and his son during their respective lives and for the benefit of a grandson until he attained the age of twenty-five years. The balance of the proceeds was to be held for the benefit *32 of the decedent's wife during her life. The trustees were authorized to advance the corpus of the trusts for the benefit of the decedent's wife and children. Upon the death of those beneficiaries the remaining corpus was to be paid over in ways not herein material, except that any portion not so paid was to be paid "to the distributees of the Grantor, determined as of the time of distribution under the laws of the State of New York governing intestate distribution." An amount not exceeding $9,000 was also to be held in trust for the payment of certain legacies to named relatives and charities if the decedent provided such legacies in his will and if his estate was insufficient to pay them in full. That trust and the trust for the grandson had priority upon the proceeds of the insurance. The trustees were given comprehensive powers of investment and administration. They were also authorized to pay taxes on the decedent's estate as follows: "FIFTH: Before setting up the trusts as hereinbefore provided, the Trustees may, at their option and in the exercise of their absolute discretion, pay out of the proceeds of said insurance policies, any estate, transfer, succession or inheritance *33 taxes which may be levied against the estate of the Grantor, or may loan the executors of the Grantor's estate, money for the purpose of paying the whole or any part of said taxes, or any debts of said estate, or purchase from the estate and hold as part of the trusts hereby created, any assets of the estate which the executors may desire to liquidate for the purpose of meeting such taxes and/or debts, at such price or prices as may be agreed upon between the executors and Trustees, and such agreement shall be binding and conclusive upon the parties claiming hereunder." After the execution of the trust and prior to the end of 1938 the decedent assigned nine policies of insurance to the trustees. The face amounts of the policies aggregated $100,000. At the time of the assignments the net cash surrender value of the policies was approximately $2,200. The nine policies were listed as part of schedule "A" of the trust. As to those policies the trust provided in part as follows: "SEVENTH: Nothing herein shall be deemed to permit the grantor to amend, alter or revoke the trusts with respect to the policies particularly specified in Schedule 'A' hereto annexed, or to reserve to the grantor *34 the privilege of borrowing upon the security of any or all of said policies particularly specified in Schedule 'A' hereto annexed, or of surrendering the same, or any power or control whatsoever with respect to said policies particularly specified in Schedule 'A' hereto annexed. "Without in any way limiting any rights of the trustees with respect to such insurance, the trustees are hereby authorized, in their discretion, to borrow upon the security of any or all of the policies particularly specified in Schedule 'A' hereto annexed, such sum or sums as they deem necessary for the purpose of paying premiums due on said policies." The decedent paid all of the premiums on the nine policies of insurance. He paid a total of $43,420.14 prior to January 10, 1941, and a total of $12,343.29 after that date. The latter amount was used by the petitioners as the basis for the proportionate amount of the proceeds of the insurance which they included in the gross estate. The decedent executed a will concurrently with the execution of the trust on July 23, 1937. He provided therein that all of his personal effects, household furnishings and cash (including proceeds of any insurance payable to *35 the estate), and one-fourth of the residue of his estate were to be held in trust for the benefit of his wife for life. The remaining three-fourths of the residue was to be paid to his issue per stirpes absolutely. The decedent also provided legacies aggregating $9,000 to nine named relatives and charities and he released his brother from indebtedness. The executors and trustees were directed to pay all inheritance, transfer or estate taxes from the residuary estate. In addition to the motives disclosed by the instruments of July 23, 1937, the decedent had other motives in executing the trust and assigning the nine policies of insurance to the trustees. He desired to avoid estate taxes. He also wanted to create an estate which would not be accessible to creditors. At an undisclosed time, the decedent had experienced financial reverses. At the time of the execution of the trust and the will on July 23, 1937, the decedent was fifty-three years of age. In the middle of July 1937 he consulted a physician who found that the decedent's condition of health was excellent except for varicose veins in his legs. The decedent had no other complaint at that time and he was not then apprehensive *36 of death. At later times he had minor complaints, including some sugar in his system for which he was treated by diet control and reduction in weight. He remained active in business until the latter part of January 1944 when he complained of a pain in his heart. He died a few months later of coronary thrombosis. On February 20, 1942, the decedent executed a second trust in which he expressed an intention of making policies of insurance on his life payable to the trustees. Upon his death the trustees were to collect and hold the proceeds thereof in separate trusts of stated amounts for the benefit of his wife during her life (and upon her death for the benefit of his two daughters during their lives) and for the benefit of a granddaughter until she attained the age of twenty-five years. The trust contained a provision for the payment of taxes similar to the Fifth clause in the trust of July 23, 1937, quoted hereinbefore. The decedent reserved the right to amend, alter, or revoke the second trust. That right was exercise on April 5, 1944, by increasing the amount to be held in trust for the decedent's wife. The proceeds of the policies assigned under this trust are not involved in *37 this proceeding. The decedent executed his last will concurrently with the execution of the second trust on February 20, 1942. He omitted therefrom any provision for the payment of legacies to the nine named relatives and charities hereinbefore mentioned. After providing that his personal effects and household furnishings were to be held in trust for the benefit of his wife he gave all the residue of his estate in trust for the benefit of his wife and two daughters in separate trusts of stated proportions. The income from the trusts was to be paid to the beneficiaries during their lives and upon their deaths the corpus was to be paid as they might appoint by will or in ways not material here. The decedent directed his executors to pay any and all inheritance, estate, or transfer taxes. This will was admitted to probate. The trust of July 23, 1937, was executed by the decedent and the nine policies of insurance in question were assigned by him to the trustees in contemplation of death within the meaning of section 811(c). Opinion LEMIRE, Judge: The petitioners included part of the proceeds from the nine policies of insurance in the gross estate on the basis of the proportion *38 of the premiums paid by the decedent after January 10, 1941, to the total premiums paid. See section 811(g), as amended by section 404 of the Revenue Act of 1942. The respondent contends that the remaining proceeds are includable in the gross estate under that section because the decedent possessed at his death certain incidents of ownership. But the respondent's initial and main contention for the inclusion of the entire proceeds is that the trust was executed and the transfers incident thereto were made by the decedent in contemplation of death within section 811(c). In resolving that issue we are controlled by the tests given in United States v. Wells, 283 U.S. 102, i.e., whether the thought of death was the dominant, controlling, or impelling motive for the transfers in question. The evidence has convinced us that the decedent intended to provide an integrated plan of testamentary disposition by the instruments which he executed on July 23, 1937. The insurance trust did not create any property for the immediate enjoyment of the beneficiaries. The proceeds of the policies were to be enjoyed only upon his death. He gave the trustees authority to borrow on the policies, *39 but only for the purpose of paying premiums and thereby keeping the policies in effect until his death. He executed a will on the same day. The will and the trust were integrated with respect to the payment of certain legacies for named persons and charities and the trustees were authorized to pay taxes on the decedent's estate. Cf. Estate of Davidson v. Commissioner, 158 Fed. (2d) 239; Purvin v. Commissioner, 96 Fed. (2d) 929; Igleheart v. Commissioner, 77 Fed. (2d) 704. The decedent also wanted to avoid the payment of estate taxes. That fact has been alleged in the petition, admitted in the answer, and further proved by the testimony. In Vanderlip v. Commissioner, 155 Fed.2d 152, certiorari denied, 329 U.S. 728, it was held that a transfer which postponed enjoyment and which had the sole purpose of escaping estate taxes was in contemplation of death. We have not ignored the decedent's desire to protect his family from creditors. We have considered that motive in the light of the decedent's past experience. But there is no evidence that he had any debts or that he was engaged in a hazardous business when the trust was created. *40 Moreover, there is no showing that the transfers of the insurance policies were necessary to free the policies from the claims of creditors. Cf. Estate of George F. Hurd, 9 T.C. - (Oct. 15, 1947). We have also considered the decedent's health. The facts concerning his physical condition do not afford any basis for imputing a motive to the decedent at any time material hereto. On all the evidence we have concluded that the decedent's dominant motive was the thought of death. Accordingly, we have found as an ultimate fact that the transfers in question were made in contemplation of death. We hold that the entire proceeds of the nine policies of insurance are includable in the gross estate for that reason. It is therefore unnecessary to consider the other contentions made by the parties. Decision will be entered for the respondent.